UNITED STATES DISTRICT COURT, MIDDLE DISTRICT
OF FLORIDA, TAMPA DIVISION

13 DEC 11 AM 11:37

Byron Steven Willis,
   Plaintiff,

vs.

CASE NO.: 8:13-cv-3110-T-30TGW

Publix Supermarket,
   Defendants.
_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Byron Steven Willis, Pro Se, brings this action to obtain redress for the deprivation and conspiracy to deprive Plaintiff of his federally protected rights as, hereafter, alleged and for intentional Infliction of emotional distress.

### JURISDICTION AND VENUE

1. This is and action for monetary damages, injunctive and declaratory relief and other relief arising from Defendant's violation of Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e et seq, (hereafter "Title VII), and pendant state law claims, to correct the unlawful employment practices committed against Plaintiff herein on the basis of race. The court's jurisdiction in invoked pursuant to 28 U.S.C. § 1331 in that, this is a civil action arising under the Constitution and laws of the United States, and all acts complained of herein occurred within the jurisdiction of the United States District of the Middle District of the Middle District of Florida.

2. The case or controversy is appropriately heard in the Tampa Division of the Middle District of Florida pursuant to Middle District Local Rule 1.02 c, as the Tampa Division encompasses the county having the greatest nexus with the causes of action and claims of the Plaintiff. This Court also has jurisdiction over Plaintiff's pendant state law claims, as they arise out of a common nucleus of facts in support of the federal causes of action, and hence are claims over which it should exercise supplemental jurisdiction.



## PRELIMINARY STATEMENT

3. Publix Supermarket, Inc., is a privately held corporation headquartered in Lakeland, Polk County, Florida.

4. While employed by the Defendant as a warehouse worker, Plaintiff, Byron Willis, a black male, was subjected to discrimination based on his race in violation of Title VII and pendant state law, in the form of unlawful disparate treatment in promotions, training opportunities, and ultimately termination. This is also an action for injunctive and declaratory relief, monetary damages and other relief, pursuant to 42 U.S.C. Section U.S.C. Section 1981, to correct the unlawful discrimination and violations of Plaintiff's constitutional rights. Plaintiff filed a complaint with the U.S. Equal Employment Opportunity Commission (herein after "EEOC") after Defendant harassed, discriminated, and retaliated against Plaintiff with additional adverse treatment and reprimands, eventually terminating Plaintiff's employment from Defendant.

## FULFILLMENT OF STATUTORY CONDITIONS PRECEDENT

5. All conditions precedent to the maintenance of this action has occurred. Plaintiff has fully satisfied all prerequisites and conditions precedent to bringing the action.

6. On or about September 2012, Plaintiff filed a Charge of Discrimination with the EEOC, charging unlawful racial discrimination. A copy of the Plaintiff's charge of discrimination is attached hereto as Exhibit 1. Subsequently, the EEOC issued a Notice of Right to Sue Letter to Plaintiff; Said Notice is attached hereto as Exhibit 2.

7. Venue is appropriate in this judicial district under 28 U.S.C. 1391(b), because Defendant Publix Supermarket reside here, and all of the events giving rise to this Complaint occurred here.

## THE PARTIES

8. Plaintiff Byron Steven Willis (hereafter "Willis") is a citizen of the United States and a resident of Florida. Prior to and during the forthcoming an alleged event, Willis was employed by Defendant, Publix Supermarket (hereafter "Publix") as a warehouse worker.

9. Defendant, Publix Supermarket, Inc., (hereafter "Publix") is a corporate body organized under the constitution and laws of the State of Florida and was an employer at all times material to this action as defined by 42 U.S.C., Section 2000e et seq., "Title VII" and Chapter 760, Florida Statutes.

## FACTS

10. On or about August 29, 1996, Willis began work as a Publix employee in the Lakeland, Florida warehouse (hereafter "warehouse").
11. During his nearly 16 years of employment with Publix, Willis never ascended above warehouse worker pay.
12. During his tenure at Publix, Willis performed the duties of several positions with pay rates well over and above the position held by Willis.
13. On or about 1997, Willis sustained a work related injury to his lower back while working in the warehouse.
14. Willis continued to work without restrictions. Then, on or about December, 1999, Willis underwent surgery to his lower back resulting from his work related injury.
15. Willis returned to work (fulltime and without restrictions) on or about January, 2000. At this time, Willis began to receive minor and unmerited warnings and write-ups.
16. Willis received approximately 4 write-ups for various alleged policy infractions over the next several years.
17. On August 2, 2012, Willis was given two oral write-ups and a separate written reprimand stemming from an incident that occurred on July 21, 2012.
18. In one of the write-ups, Willis was accused of destruction of company property. Such property was identified in the write-up as "Scrubber L9011".
19. Specifically, Willis was accused of damaging the scrubber by running it into a railing and into a garbage container which resulted in damage to both the scrubber and the garbage can. It was further stated that Willis knocked over the contents of the garbage can and left it for others to clean up his mess.
20. While receiving the write-ups, Willis attempted to write, "This is not right" on the second of the two oral write-ups.
21. At this point, Jason Bamberger (Department Superintendent) pulled the paper from Willis and said, "I hear you like to fight these things. Human Resources has already been contacted. It (challenging the merits of the write-ups) will not do you any good."
22. Willis contacted and spoke with Rena Harrell (Publix Human Resources) that same night (August 2, 2012) about the write-ups.
23. Prior to speaking with Ms. Harrell, Willis took pictures of the scene where the incident in question occurred.
24. Ms. Harrell refused to look at Willis's pictures or to physically visit the scene of the incident.

25. Ms. Harrell told Willis that she was in agreement with Mr. Bamberger regarding the write-ups.
26. Willis asked Ms. Harrell if he could speak with her supervisor and was told "No".
27. Ms. Harrell stated that she would speak to her supervisor and get back to Willis.
28. On August 14, 2012, Ms. Harrell came and met with Willis at his place of work to follow-up on his request to speak with her supervisor. During this brief conversation, Ms. Harrell informed Willis that her supervisor agreed with her (Ms. Harrell) decision to support Jason Bamberger on the write-ups.
29. Ms. Harrell informed Willis that if he was still dissatisfied, he could call Mike Lester (Publix Distribution Site Manager).
30. On the morning of August 17, 2012, Willis called Mike Lester, who agreed to meet Willis at the job site at 4:00 p.m., which is the time Willis was scheduled to start his work-shift.
31. As Willis arrived to work on the evening of August 17, 2012, he was met at the warehouse entrance by Jason Bamberger and Greg Adams (Publix Warehouse Department Head). Willis was asked if he had clocked in to which he responded, "No". Willis was instructed to clock in and to wait in Jason Bamberger's office while they (Jason and Greg) attended the "kick-off meeting".
32. Upon returning to the office where Willis was instructed to wait, Jason and Greg confronted Willis about alleged audio recordings between Jason and Greg believed to have been captured by Willis on his cellular phone.
33. Willis denied having made recordings of Jason and Greg.
34. However, Willis did acknowledge having taken pictures of the scene on August 2, 2012 (the night he spoke with Rena Harrell).
35. Willis was then asked if he had his cell phone with him and replied, "Yes". At this point, Willis pulled out his cellular phone, turned it on and offered it to Jason and Greg for inspection. At this point, Willis was informed that inspection was not necessary.
36. Then, Willis asked if this discussion could wait until Mike Lester arrived because Willis believed Mike Lester would be arriving shortly. At this point, Willis was informed by Jason Bamberger that he (Jason) had already spoken with Mike Lester and that Mike Lester would not be joining in this meeting.
37. Willis was then instructed to "go back to work" and shortly thereafter Willis was called back to the office where he was informed that he was being let go.
38. On information and belief, and subject to securing admissible evidence after a reasonable opportunity for further discovery, Willis believes that other people have engaged in comparable conduct to that which serves as the basis for his termination.

39. Examples of such conduct are a Mr. Peterson, who damaged the front dock railing, which required welding in order to be fixed and Brandon Whitehurst who twice knocked a sprinkler system out of repair.

## COUNT I

## RACIAL DISCRIMINATION – TITLE VII

40. Plaintiff reasserts the factual allegations as set forth above and incorporates the same herein.
41. This is an action for discrimination in violation of Title VII of the Civil Rights Act, with damages in excess of Fifty-Thousand Dollars.
42. Plaintiff is within the protected class of individuals as defined in Title VII, in that he is an African American, Black individual.
43. Plaintiff was discriminated against by Defendant on the basis of his race, Black.
44. Similarly situated White employees of Defendant were treated differently, and more favorably than Plaintiff.
45. Plaintiff was singled out for disparate treatment during the course of his employment with Defendant.
46. Defendant was or should have been aware that its actions constituted discrimination and disparate treatment, but failed to take lawful, immediate and effective remedial action.
47. Plaintiff was passed over for promotional opportunities at his job because he is black.
48. Defendant's actions were willful in nature, and motivated by intent to discriminate against Plaintiff on the basis of his race in violation of Title VII of the "Civil Rights Act of 1964, as amended.
49. As a result of Defendant's violations of Title VII, Plaintiff has been damaged.

WHEREFORE, Plaintiff, Byron Steven Willis, prays that this Court will:

a. Issue a declaratory judgment that Defendant's methods and practices toward Plaintiff violated his rights under Title VII.

b. Enjoin Defendant and its management employees from continuing, maintaining or implementing policies in a way which deny, abridge, or withhold the rights of persons in a discriminatory fashion;

c. Order Defendant to remedy its discriminatory and retaliatory practices by:

   i. Reinstating Plaintiff to his former position;

   ii. Paying appropriate back pay;

      iii. Reinstating all benefits that Plaintiff would have enjoyed but for the Defendant's discriminatory and retaliatory conduct, including but not limited to, bonuses and pension plan contribution and level of vesting in seniority;

      iv. Paying prejudgment interest; and,

      v. Front pay in lieu of reinstatement;

d. Enter a judgment against Defendant for compensatory damages;

e. Grant Plaintiff costs and reasonable award of attorney's fees pursuant to Title VII; and

f. Provide such other and further relief as this Court deems just, necessary and proper.

## COUNT II
## RETALIATION – TITLE VII

50. Plaintiff reasserts the general allegations as set forth above and incorporates the same herein.
51. This is an action for retaliation under Title VII with damages in excess of Fifty Thousand Dollars.
52. Plaintiff is within the protected class of individuals as defined under Title VII.
53. Plaintiff engaged in a protected activity in that he complained about and objected to conduct of the Defendant which violated Title VII.
54. Plaintiff was subjected to an adverse employment action in that he was recommended for termination for complaining to management about being passed over for formal training and promotional opportunities that, based on Plaintiff's time, experience, and test results, he should have been afforded.
55. As a result of Defendant's retaliatory actions, Plaintiff has been damaged.

WHEREFORE, Plaintiff, Byron Steven Willis, prays that this Court will:

g. Issue a declaratory judgment that Defendant's methods and practices toward Plaintiff violated his rights under Title VII.

h. Enjoin Defendant and its management employees from continuing, maintaining or implementing policies in a way which deny, abridge, or withhold the rights of persons in a discriminatory fashion;

i. Order Defendant to remedy its discriminatory and retaliatory practices by:

      i. Reinstating Plaintiff to his former position;

ii. Paying appropriate back pay;

iii. Reinstating all benefits that Plaintiff would have enjoyed but for the Defendant's discriminatory and retaliatory conduct, including but not limited to, bonuses and pension plan contribution and level of vesting in seniority;

iv. Paying prejudgment interest; and,

v. Front pay in lieu of reinstatement;

j. Enter a judgment against Defendant for compensatory damages;

k. Grant Plaintiff costs and reasonable award of attorney's fees pursuant to Title VII; and

l. Provide such other and further relief as this Court deems just, necessary and proper.

## COUNT III

## 42 U.S.C. SECTION 1981

56. Plaintiff reasserts the general allegations as set forth above and incorporates the same herein.
57. This is an action against Defendant, Publix Supermarket, Inc., for intentionally violating Plaintiff's civil rights by subjecting him to a racially hostile work environment, with damages in excess of Fifty Thousand Dollars.
58. Plaintiff is within the protected class of individuals as defined by 42 U.S.C. Section 1981.
59. Defendant, Publix, had at all times relevant, an intent to discriminate against Plaintiff on the basis of his race.
60. The intentional discrimination concerned all aspects of the terms and conditions of Plaintiff's employment, thus, causing him to suffer actual injury.

WHEREFORE, Plaintiff, Byron Steven Willis, prays that this Court will:

m. Issue a declaratory judgment that Defendant's methods and practices toward Plaintiff violated his rights under Title VII.

n. Enjoin Defendant and its management employees from continuing, maintaining or implementing policies in a way which deny, abridge, or withhold the rights of persons in a discriminatory fashion;

o. Order Defendant to remedy its discriminatory and retaliatory practices by:

    i. Reinstating Plaintiff to his former position;

    ii. Paying appropriate back pay;

    iii. Reinstating all benefits that Plaintiff would have enjoyed but for the Defendant's discriminatory and retaliatory conduct, including but not limited to, bonuses and pension plan contribution and level of vesting in seniority;

    iv. Paying prejudgment interest; and,

    v. Front pay in lieu of reinstatement;

p. Enter a judgment against Defendant for compensatory damages;

q. Grant Plaintiff costs and reasonable award of attorney's fees pursuant to 42 U.S.C. §1981.

r. Provide such other and further relief as this Court deems just, necessary and proper.

## COUNT IV

## NEGLIGENT TRAINING, SUPERVISION AND RETENTION

61. Plaintiff reasserts the general allegations as set forth above and incorporates the same herein.
62. This is a common law action against Defendant, Publix, for negligent training, supervision and retention, with damages in excess of Fifty Thousand Dollars.
63. Plaintiff's rights were violated during the course of his employment with Defendant.
64. Defendant owed Plaintiff the duty to properly train and supervise its employees with regard to the law of discrimination and retaliation.
65. Plaintiff has the right to work in an environment free of discrimination and retaliation.
66. Defendant further breached its duties by failing to supervise and control the unlawful, discriminatory and retaliatory conduct of its employees.
67. Defendant's breach of its duties proximately and legally caused damage to Plaintiff.
68. Defendant's breach of its duties was willful in nature.

WHEREFORE, Plaintiff, Byron Steven Willis, prays that this Court will:

s. Enjoin Defendant from discrimination and retaliation in the future on the basis of employee's race, and from retaliation against those who stand against discrimination;

t. Require Defendant to reinstate Plaintiff to his former position, or to pay him front pay in lieu of reinstatement, as against Defendant;

u. Exercise supplemental jurisdiction over this matter;

v. Award Plaintiff the amount of all wages, including back pay with benefits, and other compensation to which he is entitled from the date he was terminated by Publix.

w. Award compensatory damages for the emotional pain, suffering, and humiliation caused by Defendant's acts of discrimination against Plaintiff.

x. Award Plaintiff his reasonable attorney's fees and costs of this action, as against Defendant, and

y. Any further and such other relief as the Court deems just and appropriate.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on each of the issues set forth herein which are triable by jury.

Respectfully Submitted,

Byron Steven Willis, Pro Se
2175 Anderson Road
Mulberry, FL 33860
(863) 640-9735