UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**BYRON STEVEN WILLIS,**

    **Plaintiff,**

v.                                              Case No.  8:13-cv-3110-T-30TGW

**PUBLIX SUPER MARKETS, INC.,**

    **Defendant.**
_____/

## ORDER

THIS CAUSE comes before the Court upon Defendant Publix Super Markets, Inc.'s Motion for Summary Judgment (Dkt. 24) and Plaintiff Byron Steven Willis' Response in Opposition (Dkt. 27).  The Court, having considered the motion, response, record evidence, and being otherwise advised in the premises, concludes that the motion should be granted and final judgment entered in Publix's favor.

## BACKGROUND

*Pro se* Plaintiff Byron Steven Willis filed this action alleging that Defendant Publix Super Markets, Inc. terminated him because of his race (black).  His claims are as follows: Count I alleges discrimination based on race under Title VII of the Civil Rights Act of 1964 ("Title VII"); Count II alleges retaliation under Title VII; Count III alleges race discrimination under 42 U.S.C. § 1981 ("section 1981"); and Count IV alleges negligent training supervision, and retention.  Publix moves for summary judgment on the entirety of Willis' claims.

Willis was employed at Publix in October 1996 as a full-time Damage Return Line Wrapper at its Lakeland Return Center. In June 2009, Willis was transferred to Publix's High Velocity Warehouse in the position of Warehouse Worker; Willis remained in that position for the duration of his employment.

Publix has policies regarding conduct and safety and requires associates to promptly report accidents and to take care of any unsafe conditions. If an associate notices an equipment malfunction or any potential hazard, he must place a tag on the equipment to warn others of the potential danger. During his employment, Publix provided Willis with continuous training on Publix's safety measures.

Publix's Associate Handbook includes its Rules of Unacceptable Conduct that lists zero-tolerance offenses; a violation of a zero-tolerance offense may result in disciplinary action, including immediate termination. The number one offense listed under the Rules of Unacceptable Conduct is, "Dishonesty of any kind." (P. Dep., Ex. 9). "Any act of dishonesty may result in discipline or you losing your job." (P. Dep., Ex. 11).

Publix prohibits its associates from photographing the interior of Publix's facilities. Publix also prohibits associates from secretly recording conversations and advises its associates that doing so may be a criminal offense in some states.

During his deposition, Willis acknowledged that he was aware of Publix's policies and rules. The record reflects that Willis was provided a copy of the Associate Handbook upon hire and received updated copies during his employment.

On July 21, 2012, Willis was instructed to clean a spill with an industrial scrubber machine. While he was operating the scrubber, Willis hit a guard railing. Willis then got off the scrubber, swept up some, but not all, of the debris, inspected the damage, and walked away from the scene. Willis admitted that the impact damaged the scrubber. Willis did not report the accident to management and did not tag the scrubber as potentially hazardous.

On July 23, 2012, a Maintenance associate informed Superintendent Jason Bamberger about the damaged scrubber and advised him that none of the associates in his department were aware of any accident or repair order. Bamberger inspected the scrubber and informed Department Head Greg Adams about the damaged scrubber. Adams then investigated the matter. Subsequently, Adams reported to Bamberger that none of the warehouse workers knew what happened. Bamberger then accessed and viewed footage of the incident; the footage showed that Willis was the scrubber's last operator and that Willis had caused the damage.

On July 31, 2012, Bamberger and Adams met with Willis to discuss the scrubber accident. During that meeting, Willis first denied that he damaged the scrubber. After further questioning, Willis asserted that he "lightly bumped" into a railing; Willis would not admit that there was any damage to the scrubber. (Bamberger Dec.; Adams Dec.). Bamberger played the footage for Willis and Willis then admitted that he caused damage to the scrubber. Bamberger pointed out to Willis that Willis did not clean up all the debris spilled from the accident. Bamberger also asked why Willis did not report the accident.

After discussing Willis' conduct with Human Resources, Bamberger and Human Resource Specialist Rina Harrell agreed on a course of action to discipline Willis. Specifically, Bamberger and Harrell agreed that the accident warranted at least three separate levels of discipline. Bamberger also conferred with his supervisor, Distribution Manager Michael Lester, regarding his disciplinary decision, and Lester agreed that it was appropriate.

On August 2, 2012, Bamberger and Adams met with Willis and presented him with: (1) an oral counseling for engaging in an unsafe act; (2) a second oral counseling for failing to report the accident; and (3) a written counseling for failing to clean up the accident debris. Willis disagreed with the discipline and asked to speak with Human Resources. That same day, Harrell met with Willis and explained the discipline policy. She also told Willis that she would present his concerns to her supervisor and follow up with Willis. Notably, Willis did not mention his race or allege any discrimination during this meeting.

Soon after her meeting with Willis, Harrell met with her supervisor, Kevin Jordan; he agreed with the decision to issue multiple levels of discipline. On August 14, 2012, Harrell met with Willis and informed him that Jordan supported the discipline decision. Willis responded that it was "okay" because he had "pictures" from the accident and also "got the conversations." (P. Dep. p. 197:24-25; Harrell Dec.). Willis waved his cell phone in front of Harrell and repeated, "I got the conversations." (Harrell Dec.). Harrell questioned Willis about what he meant and Willis admitted that he had recorded the July 31 conversation he had with Bamberger and Adams.

Harrell documented what Willis had told her and subsequently discussed the incident with Adams and Bamberger. On August 17, 2012, Bamberger and Adams met with Willis. Bamberger asked Willis if he had taken any pictures of the accident scene. Willis denied that he had taken any pictures. Bamberger asked Willis again and told Willis that it was his understanding that Willis told Harrell he took pictures of the scene. Willis then admitted that he took pictures of the accident area following the July 31 meeting. Bamberger asked Willis about the alleged statements he made to Harrell about recording the July 31 meeting. Willis repeatedly denied making any recordings. Willis also denied that he held up his phone for Harrell to see.

That same day, Bamberger and Adams discussed how to proceed in light of Willis' dishonesty about taking pictures of the accident scene. They concluded that Willis was also dishonest when he repeatedly denied making any statements to Harrell about recording the July 31 meeting because there was no reason for Harrell to fabricate those facts. In sum, Bamberger concluded, and Adams agreed, that Willis had been dishonest regarding the pictures and was continuing to be dishonest about his meeting with Harrell, and that this dishonesty warranted termination. Bamberger discussed the matter and his decision to terminate Willis with Lester and Harrell. Lester and Harrell agreed that Willis' conduct warranted termination.

Later that same day, Bamberger and Adams met with Willis and informed Willis that he was being discharged for his dishonesty. Willis was provided with termination paperwork

and informed of the option to dispute the termination through Publix's internal Discharge Review Process.

Willis exercised his appeal options; the decision to terminate Willis was upheld by two separate Human Resources Investigators. During his appeals, Willis did not claim that his discharge was based on his race.

On or about December 3, 2012, Willis filed a Charge of Discrimination with the EEOC, alleging race discrimination and retaliation based on the July 21 scrubber accident and his August 17 termination.

## SUMMARY JUDGMENT STANDARD

Motions for summary judgment should be granted only when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (emphasis in original). The substantive law applicable to the claimed causes of action will identify which facts are material. *Id.* Throughout this analysis, the court must examine the evidence in the light most favorable to the non-movant and draw all justifiable inferences in its favor. *Id.* at 255.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324. The evidence must be significantly probative to support the claims. *Anderson*, 477 U.S. at 248-49 (1986).

This Court may not decide a genuine factual dispute at the summary judgment stage. *Fernandez v. Bankers Nat'l Life Ins. Co.*, 906 F.2d 559, 564 (11th Cir. 1990). "[I]f factual issues are present, the Court must deny the motion and proceed to trial." *Warrior Tombigbee Transp. Co. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983). A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248; *Hoffman v. Allied Corp.*, 912 F.2d 1379 (11th Cir. 1990). However, there must exist a conflict in substantial evidence to pose a jury question. *Verbraeken v. Westinghouse Elec. Corp.*, 881 F.2d 1041, 1045 (11th Cir. 1989).

## **DISCUSSION**

### I. Willis' Race Discrimination Claims

Willis alleges race discrimination claims under Title VII and section 1981. The essential elements of a section 1981 employment discrimination claim are the same as a Title VII employment discrimination claim. *See Bass v. Bd. of County Comm'rs*, 256 F.3d 1095, 1109 (11th Cir. 2001) (noting same).

A plaintiff may establish a prima facie case of discrimination through direct or circumstantial evidence. *See Jackson v. Rooms To Go, Inc.*, 806-CV-01596-T-24EAJ, 2008 WL 2824814, at *5 (M.D. Fla. July 21, 2008) (citing *Standard v. A.B.E.L. Servs.*, 161 F.3d 1318, 1330 (11th Cir. 1998)). The record is clear that there is no direct evidence of discrimination; therefore, Willis must prove his claims through the familiar *McDonnell Douglas* circumstantial evidence framework. Specifically, Willis must show that: (1) he is a member of a protected class; (2) he was subjected to an adverse employment action; (3) Publix treated similarly situated employees who are not members of Willis' class more favorably; and (4) Willis was qualified for the job or job benefit at issue. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *see also Floyd v. Fed. Express Corp.*, 423 Fed. Appx. 924, 929-30 (11th Cir. 2011); *Rice-Lamar v. City of Fort Lauderdale*, 232 F.3d 836, 842-43 (11th Cir. 2000).

If Willis can prove a prima facie case of employment discrimination, "[t]he burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason" for the employment action. *McDonnell Douglas Corp.,* 411 U.S. at 802. If Publix meets this burden of production, the presumption of discrimination raised by Willis' prima facie case is rebutted. *See Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254-56 (1981). Willis must then show that Publix's proffered legitimate, non-discriminatory reason is pretextual. *See id.* Notably, a plaintiff's subjective opinion that the defendant's action was discriminatory, without supportive evidence, is insufficient to establish pretext to avoid

summary judgment. *See Woodbury v. Sears, Roebuck & Co.*, 901 F. Supp. 1560, 1565 (M.D. Fla. 1995) (citing *Carter v. City of Miami*, 870 F.2d 578, 585 (11th Cir. 1985)).

Publix argues that Willis cannot establish the third element of his prima facie case. Publix also argues that even if Willis established a prima facie case, Willis cannot demonstrate that the proffered reasons for his termination are pretext for discrimination. The Court agrees.

Willis has not pointed to any evidence in the record establishing that he was treated less favorably than similarly situated employees outside his protected class. Willis vaguely claims that two white associates, Peterson and Whitehurst, had worse accidents and were not terminated. Willis is referring to the scrubber accident. The record is undisputed, however, that Willis was terminated for his dishonesty during the investigation of the scrubber accident. Thus, Peterson and Whitehurst cannot serve as comparators. *See McQueen v. Wells Fargo*, 573 Fed. Appx. 836, 838 (11th Cir. 2014) (affirming summary judgment on race discrimination claim due to the plaintiff's failure to identify an appropriate comparator similar "in all relevant respects," as alleged comparator did not violate same policy as the plaintiff). Notably, Willis admitted during his deposition that anyone, regardless of race, could have been terminated for the same reasons as he was. Accordingly, Willis falls woefully short of establishing a prima facie case of race discrimination under Title VII or section 1981.

Even assuming, for the sake of argument, that Willis could establish a prima facie case, his discrimination claims still fail. The record reflects that Publix had a legitimate,

nondiscriminatory reason for discharging Willis and Willis has not pointed to any evidence of pretext. As set forth above, the record is undisputed that Publix terminated Willis because Publix believed Willis was dishonest; Willis initially denied taking pictures of Publix's interior and refused to admit that he told Harrell he had recorded a conversation between himself and his supervisors.

Willis has offered no credible evidence to call into question the truth of Publix's proffered reason. More important, Willis has pointed to no credible evidence that Publix's true reason for terminating Willis was based on Willis' race. Indeed, Willis admitted during his deposition that he does not know if race motivated his termination. Willis may question Publix's decision to terminate him and deny that he acted dishonestly but "[t]he inquiry into pretext centers on the employer's beliefs, not the employee's beliefs and, to be blunt about it, not on reality as it exists outside of the decision maker's head." *Alvarez v. Royal Atlantic Developers, Inc.*, 610 F.3d 1253, 1266 (11th Cir. 2010).[1]

Finally, Publix argues that to the extent Willis attempts to assert a claim for failure to promote based on his race, said claim would fail because Willis did not exhaust his remedies. The Court agrees. Willis did not include a promotion claim in his charge of discrimination. Moreover, Willis admitted during his deposition that his lawsuit is based only on the July scrubber accident and the August termination. And Willis' response to Publix's motion for

---

[1] Notably, Adams, who is also black, agreed with Bamberger's decision to terminate Willis.

summary judgment does not point to any evidence establishing a failure to promote claim; thus, the claim would fail on its merits.

In sum, Publix is entitled to summary judgment on all of Willis' discrimination claims. **II.   Willis' Retaliation Claim**

To prove unlawful retaliation under Title VII, Willis must establish that: (1) he engaged in protected conduct; (2) he suffered an adverse employment action; and (3) the adverse action was causally related to the protected conduct. *See McCann v. Tillman*, 526 F.3d 1370, 1375 (11th Cir. 2008). If Willis establishes these elements, "the burden of production shifts to [Publix] to rebut the presumption by articulating a legitimate, non-discriminatory reason for the adverse employment action." *Brown v. Alabama Dept. Of Transp.,* 597 F.3d 1160, 1181 (11th Cir. 2010). If Publix successfully rebuts the presumption of retaliation, then the burden shifts back to Willis to show that Publix's purported reasons are a mere pretext for retaliation. *See id.* at 1181-82.

Willis' response vaguely refers to complaints he made during the investigation of the scrubber accident. Even assuming Willis has established that he engaged in protective activity prior to his termination, any retaliation claim fails as a matter of law because Willis has not established that he was terminated as a result of his alleged complaints of discrimination. As Publix points out, the decision maker, Bamberger, and all the other persons involved in Willis' termination (Adams, Harrell, and Lester) testified that they had no knowledge of Willis' alleged complaints. And Willis has not established any temporal proximity between any alleged complaints of discrimination and his termination.

Also, even if the Court assumes, for the sake of argument, that Willis can establish a prima facie case of retaliation, the record reflects, as explained in more detail above, that Publix had a legitimate and non-retaliatory basis for Willis' termination and Willis failed to point to sufficient evidence of pretext.  Again, Willis does not point to anything specific that was incorrect or false about his termination, other than his conclusion or assumption that his termination was premised on his race.  It bears repeating that Willis' own evaluations and opinions about his ultimate termination are insufficient to establish pretext.  *See Standard v. A.B.E.L. Services, Inc.*, 161 F.3d 1318, 1332-33 (11th Cir. 1998); *Holifield v. Reno*, 115 F.3d 1555, 1565 (11th Cir. 1997).

In conclusion, it is important to note that the Eleventh Circuit stresses the following on pretext:

> Title VII does not require the employer's needs and expectations to be objectively reasonable; it simply prohibits the employer from discriminating on the basis of membership in a protected class.  We do not sit as a "super-personnel department," and it is not our role to second-guess the wisdom of an employer's business decisions-indeed the wisdom of them is irrelevant-as long as those decisions were not made with a discriminatory motive.  *Chapman,* 229 F.3d at 1030.  That is true "[n]o matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken the firm's managers." *Id.* (quotation marks and citations omitted); *see also Nix v. WLCY Radio/Rahall Commc'ns,* 738 F.2d 1181, 1187 (11th Cir. 1984) ("[An] employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason."); *Wallace v. SMC Pneumatics, Inc.,* 103 F.3d 1394, 1399 (7th Cir. 1997) (listing, among "embarrassing" but non-actionable reasons under Title VII, "nepotism, personal friendship, the plaintiff's being a perceived threat to his superior, a mistaken evaluation, the plaintiff's being a whistleblower, the employer's antipathy to irrelevant but not statutorily protected personal characteristics, a superior officer's desire to shift blame to

> a hapless subordinate ... or even an invidious factor but not one outlawed by the statute under which the plaintiff is suing; ... or there might be no reason").

*Alvarez*, 610 F.3d at 1266-67. Accordingly, Publix is entitled to summary judgment on Willis' retaliation claim.

### III.   Willis' Negligent Training, Supervision, and Retention Claims

Publix argues that it is entitled to summary judgment on Willis' negligent training, supervision, and retention claims (lumped together in Count IV of the complaint) because they are based entirely on alleged discrimination. The Court agrees. These claims simply do not apply because they are not based on a tort that is recognized under Florida law. *See Ayubo v. City of Edgewater*, 2009 WL 113381, at *3 (M.D. Fla. Jan. 16, 2009) (dismissing plaintiff's negligent supervision and training claims based on racial discrimination and holding that Florida does not recognize a common law claim of negligent failure to maintain a workplace free of discrimination); *see also Freese v. Wuesthoff Health System, Inc.*, 2006 WL 1382111, at *9 (M.D. Fla. May 19, 2006); *McElrath v. Burley*, 707 So. 2d 836, 839 (Fla. 1st DCA 1998). Accordingly, Publix is entitled to summary judgment on Willis' negligent training, supervision, and retention claims.

It is therefore ORDERED AND ADJUDGED that:

1.   Defendant Publix Super Markets, Inc.'s Motion for Summary Judgment (Dkt. 24) is granted.

2.   The Clerk of Court is directed to enter Final Judgment in Defendant's favor and against Plaintiff.

    3.    The Clerk of Court is directed to close this case.

**DONE** and **ORDERED** in Tampa, Florida on January 26, 2015.

*[Signature]*
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Even\2013\13-cv-3110.msj-grant-race-discrim.wpd